**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Ole Savior,

Plaintiff,

v.

Susan Gaertner, John Wodele, Dean Barkley, and Jesse Ventura, a/k/a James George Janos,

Defendants.

Civil No. 01-1259 (DWF/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Ole Savior, 1905 Elliot Avenue South, Minneapolis, MN 55404, appeared as Plaintiff *pro se.*

Darwin J. Lookingbill, Esq., Ramsey County Attorney's Office, 50 West Kellogg Boulevard, Suite 315, Saint Paul, MN 55102-1657, appeared on behalf of Defendant Susan Gaertner.

George W. Soule, Esq., and Scott B. Paxton, Esq., Bowman & Brooke, Suite 2600, 150 South Fifth Street, Minneapolis, MN 55402, appeared on behalf of Defendants John Wodele, Dean Barkley, and Jesse Ventura, a/k/a James George Janos.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on November 30, 2001, pursuant to Defendants' motions to dismiss or, in the alternative, for summary judgment. In the Complaint, Plaintiff alleges violations of the First and Fourteenth Amendments to the U.S. Constitution and violations of a variety of state statutes relating to election practices and bribery. For the reasons set forth below, Defendants' motions are granted.

## Background

This litigation arises out of the primary election for the 1998 Minnesota gubernatorial contest. Plaintiff Ole Savior ("Savior") participated in, but lost, the DFL primary for the 1998

FILED DEC 11 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 11 2001
DEPUTY CLERK

Minnesota gubernatorial contest. Defendant Jesse Ventura a/k/a James George Janos ("Ventura") was the uncontested Reform Party candidate for the 1998 Minnesota gubernatorial election and is now the Governor of Minnesota. Defendant Dean Barkley ("Barkley") was the chairman of Ventura's campaign committee. Defendant Susan Gaertner ("Gaertner") was and is the Ramsey County Attorney. Defendant John Wodele ("Wodele") is Gaertner's husband and is currently serving as Ventura's communications director.

On July 14, 1998, at the Office of the Minnesota Secretary of State, Bill Dahn ("Dahn") and James Kane ("Kane") filed their affidavits of candidacy as Reform Party candidates for the offices of governor and lieutenant governor. There is general disagreement about why Dahn and Kane filed as Reform Party candidates. Kane has always maintained that the Secretary of State's Office told Dahn and Kane, incorrectly, that they could not file as Republican Party candidates–which is what they wanted to do–and that their only alternative was to file as Reform Party candidates. Dahn, however, has asserted that he and Kane intended to run as Reform Party candidates.

On July 19, 1998, Barkley and Ventura met with Dahn and Kane at Dahn's home in St. Paul. Again, the nature of that meeting is in dispute. Barkley, Ventura, and Kane have all indicated that Barkley and Ventura simply explained to Dahn and Kane that they could, in fact, participate in the Republican Party primary; Ventura and Barkley arranged to have Barkley meet Dahn and Kane at the Minnesota Secretary of State's Office on July 21, 1998, to assist them in withdrawing their Reform Party candidacy and refiling as Republican Party candidates. Dahn, on the other hand, has indicated that Ventura and Barkley offered certain favors to Dahn and

Kane if they would change their candidacy so that Ventura might run unopposed for the Reform Party nomination.[1]

On July 21, 1998, Ventura filed his affidavit of candidacy as a Reform Party candidate for the Minnesota gubernatorial election. Barkley apparently inquired of the Secretary of State's Office regarding the process by which Dahn and Kane would refile as Republican Party candidates; he learned that the Secretary of State would not refund the $600 filing fee, so Dahn and Kane would have to pay another $600 to change their candidacy. Ventura, Barkley, and Kane assert that Barkley was upset by this policy and felt bad that Dahn and Kane, who were not wealthy, would have to pay an additional $600 because of the misinformation allegedly provided by the Secretary of State's Office. Dahn has indicated, and Savior asserts, that Barkley and Ventura had agreed to cover the costs of Dahn and Kane's change in candidacy. Whatever the reason, it is undisputed that Dean Barkley wrote a check, drawn on an account in the name of Barkley Legal Services, for $600 to pay for the reapplication of Dahn and Kane as Republican Party candidates; the notation on the check identifies it as a "[d]onation to Bill Dahn for Governor Campaign."

On July 23, 1998, Richard Franson and the Republican Party of Minnesota made written complaints with the Office of the Ramsey County Attorney and requested an investigation regarding Barkley's payment of the filing fee. They asserted that Barkely's actions constituted a violation of the Minnesota Fair Campaign Practices Act, which provides in pertinent part, "A

---

[1] It is not at all clear what, allegedly, Ventura and Barkley offered to Kane. Dahn was running, in part, because insulation installed in his house through a state program contained high levels of formaldehyde and he was encountering problems in getting the state to repair the damage to his home. The record contains several letters, written to Barkley after Ventura won the election, which indicate that Barkley intervened on Dahn's behalf and helped to obtain about $80,000 in repairs to Dahn's home.

person may not reward or promise to reward another in any manner to induce the person to be or refrain from or cease being a candidate." Minn. Stat. § 211B.10. An investigator for the Ramsey County Attorney's Office allegedly commenced an investigation upon receipt of the complaints.

On September 22, 1998, the results of the primary gubernatorial election were certified. Norm Coleman won the Republican Party nomination; Ventura, who had been unopposed, was nominated as the Reform Party candidate.

On November 10, 1998, Savior filed a complaint against Barkley and Ventura in Ramsey County District Court. Although election contests are supposed to be referred to the Minnesota Supreme Court for appointment of a three judge panel, the Ramsey County District Court instead assigned the case in the usual course of business. The District Judge assigned to the case concluded that Savior's claims were untimely because his complaint was not filed within five days of the canvass for the primary, the results of which he was challenging. Savior appealed this ruling to the Minnesota Court of Appeals, which properly concluded that it had no jurisdiction over the matter. Savior then appealed the matter to the Minnesota Supreme Court. In an order signed by Chief Justice Kathleen Blatz, the Minnesota Supreme Court agreed that proper procedure had not been followed because the matter had not been referred to the Supreme Court for appointment of a three-judge panel, but concluded that the district court had properly determined the timeliness issue. Because reconsideration by a three-judge panel would be a waste of judicial resources, the Minnesota Supreme Court affirmed the district court's dismissal of Savior's case.

On November 17, 1998, the Secretary of State's Office certified the results of the general gubernatorial election; Ventura won that election.

On December 17, 1998, the Ramsey County Attorney's Office determined that it might have a conflict of interest and referred Richard Franson and the Republican Party's complaints regarding Barkley's conduct to the Anoka County Attorney's Office. On December 31, 1998, the Anoka County Attorney's Office determined that Barkley's conduct did not constitute a violation of Minn. Stat. § 211B.10 because Dahn and Kane were candidates before Barkley's conduct and they were candidates after Barkley's conduct, so the conduct did not either encourage or discourage their candidacy; the Anoka County Attorney's Office determined that influencing party affiliation did not fall within the ambit of behavior proscribed by the statute.

On January 7, 1999, Richard Franson filed a complaint with the St. Paul City Attorney's Office alleging that Gaertner committed a misdemeanor in violation of Minn. Stat. § 211B.16 because she failed to promptly investigate his claims against Barkley and Ventura. That matter was referred to the Minneapolis City Attorney's Office which concluded that Gaertner did not violate the statute.

On February 15, 2000, Leslie Davis, a resident of Minneapolis, filed a complaint against Dahn and Kane for violation of the Minnesota Fair Campaign Practices Act. Davis asserted that Dahn and Kane violated the statute by accepting money and services in exchange for switching their party affiliation. That complaint was referred to the Scott County Attorney's Office, which declined to bring criminal charges.

Savior instigated the instant action on July 12, 2001. Savior asserts that Barkley and Ventura violated the Fair Campaign Practices Act by, essentially, bribing Dahn and Kane to switch parties; that Gaertner violated the statute by failing to promptly investigate the early charges of misconduct, by holding on to the complaints until December of 1998, and by

ultimately referring them to "Ventura-friendly" county attorney offices; and that Barkley, Ventura, Gaertner, and Wodele conspired to effect election fraud.

**Discussion**

**1. Standard of Review**

This matter is before the Court on Defendants' motions to dismiss or, alternatively, for summary judgment. In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Subject Matter Jurisdiction**

With respect to Savior's claims based upon the United States Constitution, the Defendants assert that Savior's Complaint does not specify with sufficient particularity the basis for his constitutional claims and that, to the extent that Savior does allege constitutional violations, he lacks standing to assert them. In the absence of colorable constitutional claims, the Defendants assert that this Court lacks subject matter jurisdiction over this matter. The Court agrees.

Savior's Complaint states only that the Defendants committed "violations of state and Federal Laws concernig [sic] state Statutes & Constitution amendments I and 14th." This statement does not suggest *how* Defendants' conduct violated Savior's constitutional rights. Such a bald assertion is insufficient to raise a federal question and to vest the Court with subject matter jurisdiction over this action.

More importantly, to the extent that Savior has subsequently defined the nature of his constitutional claims, he lacks standing to assert those claims against these Defendants. First, Savior contends that Gaertner deprived him of due process by failing to investigate the claims brought against Barclay and Ventura. Savior lacks standing to pursue such a claim, however,

because he did not, himself, file a claim with the Ramsey County Attorney's Office; those claims which were allegedly neglected by Gaertner were filed by Richard Franson, the Republican Party of Minnesota, and Leslie Davis. Savior lacks any particularized interest in Gaertner's handling of those investigations; rather, his interest is limited to the general interest shared by all citizens of Minnesota, and that generalized interest is insufficient to confer standing.

Savior further alleges that his due process rights were violated when the Ramsey County District Court disposed of his initial state court action without first referring the matter to the Minnesota Supreme Court and, again, when Chief Justice Blatz issued her decision on Savior's appeal without first appointing a three-judge panel to review his claims. Those allegations, however, do not assert any wrong-doing by any of the Defendants named in this action.

Because the Complaint fails to assert any valid constitutional claims as against these Defendants, Savior's constitutional claims should be dismissed with prejudice. In the absence of the constitutional claims, the Court lacks subject matter jurisdiction over Savior's remaining state statutory and common law claims; accordingly, those additional claims should be dismissed without prejudice.

Mr. Savior vehemently asserts that his case has never been heard on the merits, and he implores this Court to give him a forum. Undoubtedly, Mr. Savior will construe this Court's dismissal for lack of jurisdiction as turning on a technicality, as an attempt to dodge the merits of his claim. However, the Court hopes that Mr. Savior will understand that the legal principles which dictate the Court's decision–standing and subject matter jurisdiction–implicate important issues of the appropriate role of the courts and the balance of federal and state authority.
Mr. Savior asserts that he has brought this litigation in an attempt to defend the fundamental

democratic principles on which this country was built. Those same democratic principles, and the legal principles which have grown out of them, mandate the outcome here.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants John Wodele, Dean Barkley, and Jesse Ventura's Motion to Dismiss (Doc. No. 6) and Defendant Susan Gaertner's Motion to Dismiss (Doc. No. 12) are **GRANTED** as follows:

a. The motion is **GRANTED** as to Plaintiff's claims premised on the U.S. Constitution, and those claims are **DISMISSED WITH PREJUDICE**.

b. The motion is **GRANTED** as to Plaintiff's remaining claims, and those claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 11, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995